## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Nicholas R. Major,

      Plaintiff,

v.

Halliday Watkins & Mann, P.C. and
Connexus Credit Union f/k/a Endura
Financial Credit Union,

      Defendants.

Case No.: 0:24-cv-01897 (ECT/DJF)

**MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEYS'
FEES AND COSTS**

## I.    INTRODUCTION

Plaintiff Nicholas R. Major ("Major") hereby moves for an award of
attorney's fees and costs against Defendant Halliday Watkins & Mann, P.C.
("Halliday"). This case arises under the Fair Debt Collection Practices Act, 15
U.S.C. § 1692 *et seq*. This case was resolved through the acceptance of Halliday's
Rule 68 Offer of Judgment, which provided for the entry of judgment in favor of
Major in the amount of $3,000.00. (Christensen Decl. ¶ 78.) The offer was a
damages-only offer. It did not include the costs of litigation or reasonable
attorney's fees pursuant to 15 U.S.C. 1692k(a)(3) and expressly reserved the
determination of those amounts to the Court.

In response to Major's initial offer to settle fees, Halliday responded with a
second Rule 68 offer of judgment. The offer stated:

> As to any and all claims in Plaintiff's complaint against Defendant HWM,
> judgment for actual damages and statutory damages in the amount of

$3,000.00 in favor of Plaintiff and against Defendant HWM as settlement for any and all of Plaintiff's claims against Defendant HWM in this action. This offer does not include any amount of money Plaintiff may be entitled as an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3).

(Rule 68 Offer, Exhibit to Notice of Acceptance of Offer [Dkt. 29].)

After Major accepted the Rule 68 offer, he reached out through counsel to attempt to resolve the fees and costs outside of motion practice. Halliday responded by serving a second Rule 68 offer on July 16, 2024.

Judgment for costs of litigation and reasonable attorney's fees in the amount of $5,000.00 in favor of Plaintiff and against Defendant HWM as settlement for any and all costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Defendant HWM. This offer is separate and apart from the judgment for actual damages and statutory damages in the amount of $3,000.00 in favor of Plaintiff and against Defendant HWM as settlement for any and all of Plaintiff's claims against Defendant HWM in this action.

(Christensen Decl. ¶ 83.)

Halliday subsequently informed Plaintiff's counsel that it intended the Rule 68 offer to be the only offer and "as a way to possibly cut off any additional fees incurred." (Christensen Decl. ¶ 84.) There is no basis in the rules or caselaw for a second Rule 68 offer after the acceptance of a first damages-only offer.

Major now seeks the Court's approval of his fees and costs from successfully litigating this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). The FDCPA mandates an award of reasonable attorney fees and costs to a prevailing plaintiff. 15 U.S.C. § 1692k(a).

In the face of the improper second Rule 68 offer, Major is left with no other

choice than to file this motion and therefore respectfully requests that the Court grant his motion for fees and costs in full.

## II.    FACTS

Major brought this case against Halliday for violations of the FDCPA by Halliday. *See* Complaint (MCRO #1).  By virtue of the terms of the Judgment, Major is a prevailing party in this action and now brings this motion for attorney's fees and costs. No agreement has been reached between the parties regarding fees and costs in this matter despite good faith, repeated efforts, by Major  to resolve it.  Therefore, the instant motion follows.

**Origination of the Two Loans and Mortgages**

On or about October 27, 2020, Dennis Ray Major passed away, leaving Major as the sole heir acquiring all of his ownership interest in his home. (Major Decl. ¶ 3.) The home is located at 4802 Howe Avenue SW, Howard Lake, Minnesota 56038 and legally described as follows:

> The north 539.88 feet of the west 384.96 feet of the Southwest Quarter of the Southeast Quarter, Section 6, Township 119, Range 27, Wright County, Minnesota, as measured at right angles to the west and north line thereof, according to the United States Government Survey thereof and situate in Wright County, Minnesota

(the "Home" or "Property"). (*Id.*)

Major was the Personal Representative of Dennis Ray Major's estate and the sole heir. (*Id.* ¶ 4.) It was difficult and arduous for Major to settle Dennis Ray Major's estate and Major put significant effort towards correctly settling the

estate. (*Id.* ¶ 5.) Major put significant effort towards the estate as the Home was to officially become his and he prioritized being secure and financially responsible in the Home. (*Id.* ¶ 6.)

On May 18, 2022, Major conveyed the Property to himself and Ms. Nicolle M. Mucciarcciaro via Quit Claim Deed as a part of the estate disposition, which was recorded in the Wright County Recorder's Office on May 24, 2022, as document number A1507963. (*Id.* ¶ 7.) At that time, Major was aware that, on May 6, 2004, Dennis Ray Major had executed a certain note to Honeywell Federal Credit Union in the amount of $93,000.00, which was secured by a mortgage on the Home (collectively "the 2004 Mortgage Loan"). (*Id.* ¶ 8.) In June 2022, Major paid $29,218.67 to New Residential/Shellpoint to pay the loan balance in full for the 2004 Mortgage Loan. (*Id.* ¶ 9.) In exchange, Major received a lien release from New Residential/Shellpoint, which he recorded. (*Id.* ¶ 10.)

When Major paid the 2004 Mortgage Loan in full, he had no knowledge of any other loans secured by mortgages on the Home. (*Id.* ¶ 11.) From the date Major moved into the Property in 2013 through the date the loan was satisfied in June 2022, he never received any statements, letters, or other communications from any other mortgage lenders or servicers claiming any interest in the Property or a loan. (*Id.* ¶¶ 12-13.) Despite the satisfaction of the First Loan and the release of the First Mortgage, Major received a letter from Connexus dated May 26, 2023, which falsely represented that he still owed money under the 2004

Mortgage Loan that he had paid in full almost a year earlier. (*Id.* ¶ 14.) The letter

from Connexus stated, in part, the following:

> Mortgage Recorded October 7, 2004 Loan 143 . . . Connexus Credit
> Union ("Connexus") is the successor-in-interest to Honeywell
> Federal Credit Union and holds the mortgage concerning the
> Property Address. The mortgage remains as the deceased, Dennis
> Ray Major, failed to remit the required payments under the Note. As
> a result, demand is hereby made for payment of $105,409.25 as of
> May 24, 2023.
>
> If you fail to remit payment, we must reluctantly conclude that you
> are not interested in working with use to address this matter.
> Thereafter, our only option is to commence foreclosure proceedings
> against the property.

(*Id.* ¶ 15.) Not only did Connexus falsely represent that Major owed money that

he did not owe, but it also threatened to foreclose the 2004 Mortgage Loan on the

Home if Major did not pay this bogus debt. (*Id.* ¶ 16.)

Major believed the letter to from Connexus to be a part of a scam, but

immediately called Connexus to dispute the validity of the debt and inform

Connexus that the loan had already been paid in full. (*Id.* ¶¶ 17-18.)

On the call with Connexus, Connexus refused to provide Major with any

information, other than claiming that the debt owed was for a different mortgage

on the Home, which caused Major significant emotional distress. (*Id.* ¶¶ 19-20.)

Connexus' May 26, 2023 letter referenced "Mortgage Recorded October 7,

2004 Loan 143," which was the 2004 Mortgage Loan that Major paid in full. (*Id.*

¶ 21.) That communication left Major with the impression that the 2004

Mortgage Loan has not been paid in full and there was another loan secured by

the Home that was owing and delinquent. (*Id.* ¶ 22.)

On September 18, 2023, Major received a letter from Halliday Watkins & Mann, P.C. ("Halliday") that stated the following:

"HALLIDAY, WATKINS & MANN, P.C. is a debt collector. We are trying to collect a debt that you owe to Endura Financial Federal Credit Union f/k/a Honeywell Federal Credit Union"

and

"Total amount of the debt now: $160,610.69."

(*Id.* ¶ 23.) Halliday also threatened that it would foreclose the mortgage if the debt was not paid. (*Id.* ¶ 24.) That letter stated, "You had a [sic] with Endura Financial Federal Credit Union f/k/a Honeywell Federal Credit Union with account number []0050." (*Id.* ¶ 25.) That is not the account number for the 2004 Mortgage Loan. (*Id.*) The last creditor that contacted Major was Connexus. (*Id.* ¶ 26.) Major had not heard of Endura Financial Credit Union until this point. (*Id.*)

In a separate letter also dated September 18, 2023, Halliday referenced a different purported amount that stated the following:

"Mortgage Foreclosure on 4802 Howe Avenue SW, Howard Lake, MN 55349"

and

"The payoff amount as of September 18, 2023, is $106,631.31."

(*Id.* ¶ 27.) This letter only provided identifying information of the last four numbers of the loan, "0050," which Major did not recognize, and was not the account number for the 2004 Mortgage Loan, but it was the same number that

was on Halliday's previous letter. (*Id.* ¶ 28.) In the two letters, Halliday represented conflicting information regarding the purported amount owed on the Property. (*Id.* ¶ 29.) Regardless, neither communication explained how the amount could be, at the same time, both $160,610.69 and $106,631.31. (*Id.* ¶ 30.)

These letters caused Major further distress, as, after he thought he had paid off the Home, and now was being told by two different mortgagors that he owed over $100,000 plus or minus another $60,000. (*Id.* ¶ 31.) Major was completely at a loss of what he could do if multiple mortgage services insisted that he owed them a varying wide range of money. (*Id.* ¶ 32.)

### Retaining Christensen Sampsel PLLC on Contingency

Major contacted Christensen Sampsel PLLC, then known as Christensen Law Office PLLC, expressing his feelings of helplessness. (*Id.* ¶ 33.) Major and Ms. Mucciacciaro retained Christensen Law Office PLLC on September 29, 2023 in a contingency fee arrangement. (*Id.* ¶ 34.) The scope of that agreement was to bring affirmative claims related to the improper Connexus Credit Union foreclosure of Major's home. (*Id.*)

### Continued Harassment from Halliday

On November 28, 2023, Halliday sent Major another letter in which Halliday represented that the purported debt was owed to "Connexus Credit Union" in the amount of $107,465.97 but still referenced the account number ending in "0050,", despite stating in the September 18, 2023 letter that the purported debt was owed to "Endura Financial Federal Credit Union." (*Id.* ¶ 35.)

Halliday's November 28, 2023 letter also represented that "a default has occurred in the payments called for in said mortgage loan" and demanded payment of $107,465.97 within 30 days and threatened that if the payment was not made by that deadline, "Connexus Credit Union may accelerate the sums secured by the mortgage and refer this matter for a foreclosure of the mortgage and a public foreclosure sale of the property." (*Id.* ¶ 36.) Connexus' May 26, 2023 letter and Halliday's September 18 and November 28, 2023 letters represented that Major owed different debts to both Connexus and Endura for different amounts. (*Id.* ¶ 37.)

Major also received letters from Wright County regarding mortgage foreclosure counseling, which caused him significant embarrassment and distress, as he did everything correctly to pay off and satisfy the mortgage on the Property. (*Id.* ¶ 38.) This letter identified that it was in reference to a mortgage loan dated March 12, 2007 ("2007 Mortgage Loan"). (*Id.* ¶ 39.) This was the first communication that specifically referenced that mortgage loan. (*Id.*) Upon further research, Major discovered that there was a mortgage recorded against the Property with that same date. (*Id.* ¶ 40.) Major never understood there to be another mortgage against the Property. (*Id.* ¶ 41.) Further, Major never received any statements related to this loan. (*Id.*)

**Retaining Christensen Sampsel PLLC on Hourly Basis**

At this point, Christensen Sampsel informed Major that it could continue with his matter, but it would require significant title research, which was outside

the scope of the already existing contingency agreement. (*Id.* ¶ 42.) On February 1, 2024, Major and Ms. Mucciacciaro retained Christensen Sampsel PLLC on an hourly basis to undertake the title research related to this 2007 Mortgage Loan. (*Id.* ¶ 43.) The scope of that agreement was representation related to the Connexus Credit Union foreclosure of the Home. (*Id.*)

Major paid a $5,000.00 retainer as a part of this hourly agreement. (*Id.* ¶ 44.) The thrust of the hourly representation was for Christensen Sampsel to undertake research on the origin of the 2007 mortgage loan and answer Major's questions related to it. (*Id.* ¶ 45.) Christensen Sampsel undertook work under the Hourly Agreement to assist Major. (*Id.* ¶ 46.)

Major is a truck driver by profession and does not have great familiarity with real estate matters or title research. (*Id.* ¶ 47.) Some of the work that Christensen Sampsel provided Major was contacting the foreclosing attorney, sending written communications related to the 2007 Mortgage Loan, including requests for information related to that under federal law, contacting the probate attorney, researching Honeywell and what happened to its loans when it ceased to operate, researching the title companies that undertook the closings for both loans, and communicating with the attorney for the foreclosure attorney related to the interplay between the 2004 Mortgage Loan and the 2007 Mortgage Loan. (*Id.*)

During this period, Major became even more dismayed in the situation. (*Id.* ¶ 48.) Despite his efforts to handle his father's death and his estate to do

everything correctly and move on with his life in his home, he now had to pay an attorney to investigate what went wrong after his father's death. (*Id*.) The toll on Major's relationship with Ms. Mucciacciaro as a result of this litigation was too much, and she subsequently moved out of Major's home and no longer wanted to be a part of this litigation. (*Id*. ¶ 49.) This also caused significant anxiety, stress, and pain for Major, as this mess so profoundly affected his personal relationship. (*Id*. ¶ 50.) On May 21, 2024, Ms. Mucciacciaro terminated her relationship with Christensen Sampsel. (*Id*. ¶ 51.)

### III.   ARGUMENT

**A.    Major is Entitled to an Award of Attorney's Fees and Costs Under the FDCPA.**

**a.  Major was Successful on the Claims.**

Major prevailed on his FDCPA clams against Halliday.  A plaintiff may be considered a "prevailing party" for the purposes of recovering attorney's fees if the plaintiff "succeed[s] on any significant issue in litigation which achieves some of the benefit sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1986). A "successful action" in turn requires that "the plaintiff must receive some relief beyond mere entry of judgment." *Nagle v. Experian Info. Sols., Inc.,* 297 F.3d 1305, 1306 (11th Cir. 2002). As a baseline, an award of nominal damages is sufficient to satisfy the designation of a "successful action". *Id*. at 1307 (citing *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res*., 532 U.S. 598, 604 (2001). However, "[w]here a plaintiff has obtained excellent results, his

attorney should recover a fully compensatory fee." *Id.* at 435. *Hensley*, 461 U.S. at 435.

In the present case, Major brought a successful action against Halliday. Major obtained a judgment against Halliday in the amount of $3,000.00 and was the prevailing party. *See* Notice of Acceptance of Offer [Dkt. 29]; *see also* Fed. R. Civ. P. 68. The party who accepts a Rule 68 offer is the prevailing party. *Marek v. Chesny*, 473 U.S. 1, 11 (1985). Indeed, the scope of the offer also demonstrates that Major prevailed. This judgment is over the maximum statutory damages Major is entitled to under the FDCPA, that allows the Court to award costs for reasonable attorney's fees. *See* 15 U.S.C. § 1692k(a)(2)(A); 15 U.S.C. § 1681n(a)(1)(A); *see also Nagle,* 297 F.3d at 1306.

**b. An award of attorney's fees is mandatory in a successful action.**

Fee shifting provisions are designed to attract competent counsel to vindicate consumers' rights. *See Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995) ("in order to encourage able counsel to undertake FDCPA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases"); *Greene v. Equifax Info. Servs.*, No. 19-cv-11094, 2021 U.S. Dist. LEXIS 227280, at *2 (E.D. Mich. Mar. 15, 2021) ("By providing competitive rates, Congress and courts assure that attorneys will take such cases and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.") (citing *Student Public Interest Research Group v. AT&T Bell Laboratories*, 842

F.2d 1436, 1449 (3rd Cir. 1988)). Thus, by awarding mandatory attorneys' fees to a successful consumer under the FDCPA and/or FCRA, courts encourage attorneys to continue to step forward to advocate for consumers who otherwise may not be able to afford an attorney. *See Murphy v. Ford Motor Credit Co.*, 629 F.2d 556 (8th Cir. 1980) (a Truth in Lending Act case that noted that attorney's fees awards "encourage meritorious enforcement actions under the provisions of the Act").

Policy aside, both the FDCPA and FCRA expressly require the recovery of costs, together with reasonable attorney's fees, to a successful Plaintiff. *See* 15 U.S.C. § 1692k(a)(3); 15 U.S.C. § 1681n(a)(3); and 15 U.S.C. § 1681o(a)(2). The relevant language used in both statutes is nearly identical. Plainly, an award of attorneys' fees is mandatory under the relevant statutes. *See, e.g., Alberts v. Nash Finch Co.*, 245 F.R.D. 399, 410 (D. Minn. 2007) ("the FDCPA's fee-shifting provision is *mandatory*") (emphasis added); *Greene*, 2021 U.S. Dist. LEXIS 227280, at *1 ("[t]he *mandatory* attorney's fees provided by 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2) reflect Congress' intent that the FCRA be enforced by consumer's counsel acting as private attorneys general") (emphasis added); *Graziano v. Harrison*, 950 F.2d 107, 113 (3rd Cir. 1991) (the FDCPA "*mandates* an award of attorney's fees") (emphasis added); *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164, 1167 (7th Cir. 1997) (refusal to award attorney fees to debtors who brought successful action was abuse of discretion, inasmuch as award of reasonable attorney fees to debtors was *mandatory*) (emphasis added). However,

beyond requiring that an award be made, the Court has discretion to determine the *amount* of reasonable attorneys' fees to award.

Here, where Major accepted an offer in resolution of his claims against Halliday, Major's attorney achieved a complete victory. Not only were Major's rights as a consumer upheld, but he has resoundingly prevailed under the FDCPA. As such, Major's attorney is entitled to be compensated fully for the fees and costs incurred in this matter.

**B.    The Attorney's Fees that Major Incurred Were Necessary to Litigate His Claims Against Halliday.**

**a.  Major's Fees are Reasonable**

The number of hours spent on this matter by Major's counsel was reasonable. In calculating an award of attorney's fees, the court must first begin with the "Lodestar" figure, which one calculates by multiplying the hours reasonably expended by a reasonable hourly rate. *Hensley*, 461 U.S. at 433 (viewing an award of fees under 42 U.S.C. § 1988); *see also Armstrong v. Rose Law Firm, P.A.*, No. CIV. 00-2287MJD/SRN, 2002 WL 31050583, at *3 (D. Minn. Sept. 5, 2002) (applying the Lodestar method in an FDCPA action); *Young v. Diversified Consultants, Inc.*, 554 F. Supp. 2d 954 (D. Minn. 2008). The burden is on the applicant to prove that the fee request is reasonable, with a strong presumption that the lodestar amount represents a fair and appropriate fee award. *Hensley*, 461 U.S. at 436.  The Court must consider:

(1)    the plaintiff's overall success;

(2)     the necessity and usefulness of the plaintiff's activity in the particular

matter for which fees are requested; and

(3)     the efficiency with which the plaintiff's attorneys conducted that

activity.

*Jinkins v. Missouri*, 127 F.3d 709, 718 (8th Cir. 1997).

The Court may also consider other factors in calculating the lodestar, including: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 n.3. However, "[t]he most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436; *Zagorski*, 128 F.3d at 116; *Tolentino*, 46 F.3d at 652.

Here, the customary billing rates are consistent with rates charged by similar firms for staff with similar backgrounds and experience. Major's counsel charged reasonable rates for their services. Major supports his request for compensation of attorney's fees with detailed logs of tasks completed on his case and time to accomplish those tasks, as identified in 1/10 increments. (*See* Christensen Decl.)

The one atypical component of this case is that emergent issues in Major's case required significant title research and information gathering, which was outside of the scope of the initial contingency agreement. (Major Decl ¶ 42.) Here, the 2007 mortgage emerged as a title interest that had not been released. (Supple Decl. ¶ 9,) Defendant Halliday's communications, and the mortgage servicers' communications, related to the to-be-foreclosed interest, the identity of the purported mortgage, and the amount owed were a confounded mess. (*Id.* ¶¶ 14 – 17.) When regarding all of the communications, Major and his counsel could not reconcile the date of the mortgage, the amount owed under the mortgage, or the number of the loan for which the mortgage was purportedly incident. None of that information was consistent.  (*Id.*)

Regardless, the intervening hourly billing demonstrates that Christensen Sampsel's billing was very reasonable. Christensen Sampsel obtained a $5,000.00 retainer from Major to undertake the title research for the hourly non-lodestar matter.  The hourly rates are lower, and once the research bore out new basis to pursue an FDCPA claim, Major resumed his representation under the contingency agreement.

Carl Christensen appropriately billed for the contingency matter $500.00 per hour up until January 1, 2024, and then $550.00 per hour after, for his time on the matter. (Christensen Decl. ¶ 24.) For the hourly non-lodestar matter, Mr. Christensen charged $500 per hour.  Mr. Christensen's billing rate is consistent with the market rate for services provided by attorneys with similar backgrounds

and experience. (*Id.*)

Mr. Christensen has been licensed to practice law since 2005 and focuses the majority of his practice on real estate, consumer, contract, and intellectual property law. (*Id.* ¶ 7.) Mr. Christensen leads the firm's consumer law, business litigation, real estate litigation, trademark litigation, and appellate practice groups. (*Id.*) Mr. Christensen has represented clients in all stages of litigation, including through trial and appeal. (*Id.* ¶ 8.) Mr. Christensen has spoken extensively on matters of debtors' remedies, real estate, and consumer law, having presented twenty-two Continuing Legal Education seminars since 2010. (*Id.* ¶ 9.) Mr. Christensen is admitted to practice in all Minnesota state courts, in New York state court, in the United States District Courts, Districts of Minnesota, Colorado, and the Southern District of New York, the United States Court of Appeals for the Eighth Circuit, and the United States Court of Appeals for the Tenth Circuit. (*Id.* ¶¶ 14-16.) Mr. Christensen's total time spent on this matter equaled 25.4 billable hours for $13,580.00. (*Id.* ¶ 26.)

Further, this Court recently approved Mr. Christensen's and other Christensen Sampsel attorneys' non-lodestar hourly rates. In *Knapp v. Compass Minn. LLC,* this court approved the following non-lodestar rates as reasonable.

| Christensen Sampsel PLLC | |
| --- | --- |
| **Name** | **Hourly Rate** |
| Carl Christensen, Partner | $450 (before 1/1/2024)/$500 (after 1/1/2024) |
| Aaron Sampsel, Partner | $400 |
| Christopher Wilcox, Associate | $375 |
| Robert Kouba, Associate | $300 |
| Tobi Ladip, Law Clerk | $95 |
| Sydney Maglio, Law Clerk | $85 |
| Toni Hoffer, Law Clerk | $95 |
| Lisa Robertson, Paralegal | $125 (before 1/1/2024)/$140 (after 1/1/2024) |

(Christensen Decl. ¶ 78; *see also* Order on Joint Motion for Sanctions, Case no. 24-cv-1011-SRN-DTS (Aug. 9, 2024) [Dkt. 71]).  This determination tends to demonstrate that Christensen Sampsel PLLC's lodestar rates are also reasonable.

The remaining work performed for the benefit of Major by Attorney Wilcox, Attorney Supple, Clerk Maglio, Clerk Hanson, Clerk Whipple, and Paralegal Robertson is similarly reasonable.

Mr. Wilcox was admitted to practice law in 2011 and focuses his practice on real estate litigation, contract litigation, and consumer litigation. (Christensen

Decl. ¶¶ 27-34).

Mr. Wilcox has represented clients in all stages of litigation, from trial to appeal. (*Id.*) Mr. Wilcox billed $325.00 per hour under his lodestar rate (which should have been $375) for his representation in 2023, and his rate was appropriately increased to $425.00 per hour in 2024. (*Id.* ¶ 35,) Mr. Wilcox only had one non-lodestar billing entry under the hourly agreement, but it was billed through at $0.00.  Mr. Wilcox's time at the lodestar rate on this matter equaled 13.4 billable hours for a total of $5,590.00. (*Id.*)

Mr. Supple was admitted to practice law in 2013 and focuses his practice on construction litigation, contract litigation, real estate litigation, and consumer law. (*Id.* ¶ 38.)  Mr. Supple has represented clients in all stages of litigation, from trial to appeal. Mr. Supple's contingency lodestar hourly rate was $350.00 in 2023 and is $400.00 in 2024. (*Id.* ¶ 47,) Mr. Supple's non-lodestar hourly rate is $350.00 (*Id.*) Mr. Supple's work related to this matter amounted to 53 billable hours for a total of $19,250.00. (*Id.*) As a courtesy to the client, some of Mr. Supple's work was passed through at a $0.00 rate. (*Id.*)

Ms. Robertson is the office manager, paralegal, and legal administrative assistant at Christensen Sampsel PLLC. (*Id.* ¶ 63.) Ms. Robertson has worked in the legal field for 24 years in a wide variety of areas of law for a multitude of law firms in the Twin Cities during that time. (*Id.* ¶ 64.) While Ms. Robertson gained most of her legal knowledge and skills through her years of working in the legal field, she has also taken numerous CLEs as well as paralegal classes and sessions

over the course of her career including a course in legal assistant education. (*Id.*) Ms. Robertson has worked at Christensen Sampsel PLLC as the office manager and paralegal since May 2014, primarily working in the areas of real estate, business, consumer, and general legal work. (*Id.* ¶ 66.) The contingency lodestar hourly rate of Ms. Robertson, at $175.00 prior to January 1, 2024, and then to $190.00. (*Id.* ¶ 67.) Ms. Robertson's non-lodestar hourly rate is $140.00. (*Id.* ¶ 68.) Those rates are consistent with the prevailing market rate for paralegal work in the Twin Cities. (*Id.* ¶ 69.) Total paralegal time billed this matter equaled 3.2 billable hours, for a total of $533.50. (*Id.* ¶ 68.)

The hourly rate of the firm's law clerks, is similarly consistent with the prevailing market rates. The contingency lodestar hourly rate of law clerk is $145.00 per hour. The total law clerk time on this matter equaled 19.6 billable hours for a total of $3001.50.

Lastly, the costs incurred were reasonable. Major incurred fees and costs to litigate his claims. The total amount of fees and costs incurred in this matter total $873.06. (*Id.* ¶ 28(g).)

After factoring in the efficiencies of, and discounts extended by, Major's counsel, the total amount of attorney's fees, costs, and expenses incurred to defend this action equal $47,036.56. (*Id.* ¶ 29.)

### b. Major's Counsel Expended a Reasonable Number of Hours Toward the Resolution of This Case.

The Court must first determine whether the amount of time Major's

counsel spent on this case was reasonable given the results obtained and the difficulty of obtaining those results. Ultimately, the determination of the reasonable number of hours expended rests in the sound discretion of the trial court, which must "provide a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437.

Common sense and experience lends support to the simple notion that when a defendant fights hard in a consumer action, and thereby creates additional work, larger fees will be incurred just as in any other type of action. *See Armstrong, supra* (finding the defendant in a FDCPA case was obligated to pay Plaintiff $43,180 in attorneys' fees and $1,475 in costs after it chose to pursue its theory of defense); *Sonmore v. Checkrite, et al*, Civ. No. 99-2039 DDA/FLN (D.Minn.1999) (awarding Plaintiff $82,000 for attorneys' fees and $16,326.97 for costs, a total of $98,326, in a FDCPA case); *Tolentino*, 46 F.3d at 652-653 (finding attorney fee award of only $10,132.50 under FDCPA based on hourly rates lower than attorneys' normal rates of $275 per hour and $225 per hour was abuse of discretion, even though debtor had no actual damages and $1,000 in statutory damages).

Major's counsel obtained an excellent result for his client and worked towards a prompt resolution of the case. Moreover, Halliday has violated the FDCPA through abusive and deceptive collection attempts and tactics. Halliday vigorously defended this matter, as was its right, by these sorts of tactics inevitably cost money and drove up the costs of litigation. Major incurred much

of his attorney's fees because of Halliday's delays in responses, complexities of the case, and necessary time to find and analyze title documents. *See* Supple Declaration .

Major's attorney has produced a declaration that details the work and amount of time put forth in this case. (*See* Christensen Decl. discribing billing time entries.) Attorneys' fees incurred while drafting this motion are also properly included in the lodestar figure, as "compensation for time necessarily spent in preparing a fee petition is appropriate in cases where attorneys' fees are authorized by statute." *Jorstad v. IDS Realty Trust*, 643 F.2d 1305, 1314 (8th Cir. 1981). "With respect to 'fees on fees,' time spent preparing fee applications is generally compensable. However, such fees should not be excessive." *Nguyen v. Foley*, Case No. 21-cv-991-ECT-TNL, 2021 WL 1026477, at *4 (D. Minn. Apr. 6th, 2022) *quoting Rosen v. Wentworth*, 13 F. Supp. 3d 944, 953 (D. Minn. 2014). "There is no reason to think that [15.5 hours and $4,500 in fees spent on a motion for attorneys' fees] is unreasonable." *Id*.

### i. *Complexity of the case*

In addition to fighting Halliday's litigation strategies, this case was complex.

First, this case dealt with threats to take Major's home away from him. This is not a typical FDCPA case where a debt collector is faced with a dunning letter that mischaracterized the amount of a debt. Rather, the result of this abusive practice is severe—it is the loss of a home.

Moreover, the facts were complicated and difficult to unpack. Many developments arose during the duration of the lawsuit, and the case transitioned from a contingency case regarding abuse and harassment by a debt collector to an hourly case that uncovered a second mortgage loan and required ample inquiries into the title of the Property. Specifically, Attorney Ryan P. Supple thoroughly investigated the validity and existence of the relevant loans and mortgages claimed against the Property, given that Major received minimal information regarding them. (Supple Decl. ¶ 8.) What Major did receive from Halliday and Connexus was often conflicting and did not make sense, which required research and time spent Attorney Supple to make sense of the totality of the information. (*Id.*)

Upon significant amounts of research, Attorney Supple was able to conclude that Major's late father took out the First Loan which was secured by the First Mortgage in 2004. (*Id.* ¶ 9.) Dennis Major then took out the Second Loan which was secured by the Second Mortgage in 2007, however, it appeared that Dennis Major refinanced and took out the Second Loan to pay off the First Loan. (*Id.*) Attorney Supple concluded that it is likely that when Dennis Major paid off the First Loan, a mortgage satisfaction was not recorded and Connexus mixed up the two loans in its own records. (*Id.*)

Based on all this conflicting information that did not add up, Major's counsel spent significant amounts of time investigating whether either of these loans and mortgages were valid or even existed, and whether Connexus owned

either of them. This investigation included researching title records for Major's Property, sending emails and letters to various entities that may have more information to try to piece together this puzzle, and having phone conversations about the same. (*Id.* ¶ 17.)

In an effort to gain clarity and further investigate the details of the situation, on December 18, 2023, Attorney Supple drafted and sent a validation request letter to Halliday that requested "ALL documents related to any loan(s) made by Honeywell Federal Credit Union, Endura Financial Federal Credit Union, or Connexus Credit Union to Nicholas R Major, Dennis Ray Major, or Deborah K. Major." (*Id.* ¶ 18.) Additionally on December 18, 2023, Attorney Supple also drafted and sent an email to John Peterson ("Peterson"), the probate attorney for Major's father's estate requesting more information. (*Id.* ¶ 19.) On the same day, Peterson responded and stated, "if there were any record mortgage debt, it would have been taken care of before closing out the estate." Attorney Supple then exchanged more emails with Peterson in December of 2023 to tried to investigate if a second outstanding loan could exist. (*Id.*)

Further, Attorney Supple exchanged emails in December 2023 and January 2024 with Pillar Title Services to gain information on title work completed on the Property and whether they discovered any outstanding loans against the Property. (*Id.* ¶ 21.) Attorney Supple also drafted, mailed, and emailed letters to New Residential, NewRez, and Shellpoint (servicers for the First Loan and Mortgage), asking for information and documents related to the purported

loans and mortgages claimed against Major's property. (*Id.* ¶ 20.)

Through research, Major's counsel found that in May of 2011, Endura Financial Credit Union ("Endura") commenced a lawsuit against Dennis Major in Wright County District Court claiming that the Second Loan was in default. (*Id.* ¶ 11.) However, that case was never filed with the court, so it was dismissed with prejudice under Minnesota Rules of Civil Procedure Rule 5.04. (*Id.*)

On January 11, 2024, Attorney Supple emailed the attorney that signed the Complaint on behalf of Endura against Dennis Major in the 2011 lawsuit, asking for more information and documents. (*Id.* ¶ 22.) That same day, he received a reply from Connexus' Vice President of Compliance & Corporate Counsel stating, "The prior obligation has not been resolved as Dennis Major passed away in 2020 and Deborah filed for bankruptcy in 2010.  The mortgage lien remains." (*Id.*) On January 26, 2024, Attorney Supple received a letter from Shellpoint in response to my requests for more information. (*Id.* ¶ 23.) This letter and its enclosed documents only contained information related to the First Loan and Mortgage. (*Id.*) That letter stated, "This loan was paid in full effective May 23, 2022." (*Id.*)

On April 3, 2024, Attorney Supple drafted, mailed, and emailed a qualified written request ("QWR") letter to Connexus' attorneys, Halliday. (*Id.* ¶ 24.) On April 24, 2024, Attorney Supple received a response to the QWR letter form Connexus' new attorney, Jared M. Goerlitz ("Goerlitz"), which only provided information and documents related to the Second Loan and Mortgage. (*Id.* ¶ 25.) On April 30, 2024, Attorney Supple drafted and sent an email to Attorney

Goerlitz, providing more information and documents. (*Id.* ¶ 26.) In addition, that email informed Attorney Goerlitz that his QWR response letter only provided information and documents related to the Second Loan and Mortgage, but Connexus's May 26, 2023 letter to the Estate of Dennis Ray Major was in regard to the First Loan and Mortgage (identifying it by both date and loan number), so Connexus clearly has some information in its records regarding the First Loan and Mortgage. (*Id.*) However, Connexus has still failed to produce such information and documents in response to my December 18, 2023 validation request letter to Halliday and the April 3, 2024 QWR letter. (*Id.*) However, Attorney Supple did not get a response to this email, so he sent Attorney Goerlitz a follow-up email on May 15, 2024. (*Id.* ¶ 27.)

To date, Major's counsel still has not received a response from Attorney Goerlitz, Halliday, or Connexus with information and documents requested regarding the First Loan and Mortgage, even though Connexus's May 26, 2023 letter to the Estate of Dennis Ray Major was in regard to the First Loan and Mortgage (identifying it by both date and loan number). (*Id.* ¶ 28.)

In June and July 2024, Major's counsel was involved with several emails and telephone communications with Halliday's attorneys at Lewis Brisbois Bisgaard & Smith LLP, requesting more documents and information, discussing the litigation process, and discussing possible settlement. (*Id.* ¶ 29.) In addition to the written communications described above, Major's counsel also exchanged several emails and conducted several telephone calls with Major, with attorneys

for the parties, and with other entities who may have information regarding these loans and mortgage, to investigate the facts of this case, to move forward with this lawsuit, and to attempt to negotiate settlements with the parties. (*Id*. ¶ 30.)

Major's counsel also conducted legal research, drafted the Complaint in this action, and drafted other documents related to or filed in this case, reviewed pleadings, motions, and other documents filed by the other parties. (*Id*. ¶¶ 31-32.)

In sum, Major's counsel expended a great deal of effort on this case, accumulating significant fees and costs because of Halliday's defense strategies, delays in response, and the overall complexities of the claims. Despite these hurdles, Major's attorneys were able to vindicate Major's rights and obtain a result in his favor and against Halliday.

This is not a "technical" or straight forward FDCPA case at all. Defendant is sure to argue that this was a "simple case" or that it had robust defenses as to Major's claims. Whatever erstwhile defenses Defendants may have had—they have no point in this motion. The Court's job is to give effect to the terms of the Rule 68 motion, not to second guess the merits of the case. Judgments entered under offer of judgment rule are self-executing; once parties agree on terms of judgment, court has no discretion to withhold its entry or otherwise to frustrate agreement. *Mallory v. Eyrich*, 922 F.2d 1273, 1279 (6th Cir. 1991). Indeed, this Court has previously awarded $9,480.00 for a "factually and legally straightforward" FDCPA case. *See Beckler v. Rent Recovery Sols., LLC*, 83 F.4th

693 (8th Cir. 2023). This case was not factually straightforward. Likewise, the legal claims are novel and only fully discovered after conducing significant research to investigate Defendant's inconsistent representations about the identity, amount, and loan number of the secured debt. Moreover, the discovered evidence, that the subject loan was previously sued out and legally barred by Minn. R Civ. P. 5.04 was information that was in the sole possession of Defendants. Plaintiff was only able to discover that by seeking it through a request for information under the Real Estate Settlement Procedures Act. To be sure, the unanswered question is whether Defendants and their attorneys were careless, ignorant of the prior action, or reckless—all questions related to the implications of the unfiled prior action and its mandatory dismissal by rule of law. *See* Minn. R. Civ. P. 5.04 (mandating dismissal of actions with prejudice when not filed in a year).

All the time billed in this matter was reasonable and necessary to investigate the background facts, defend Major's interests, prosecute Major's legal claims, and attempt to negotiate settlements for Major. Therefore, all factors considered, the Court should find that Major's attorney expended a reasonable number of hours on this case.

### c. Proportionality is Not a Factor to be Considered.

Major anticipates that Halliday may erroneously argue that the size of Major's recovery should be considered in determining a reasonable attorney fee award. This should not be a factor at all as the amount of attorney's fees awarded

is not required to be proportionate to the amount of damages recovered. *See Loggins v. Delo*, 999 F.2d 364, 368 (8th Cir. 1993) (acknowledging that "proportionality between the amount of damages and fee awards was not required"). To the contrary, a court may abuse its discretion by applying proportionality to an attorney fee award. *See Jordan v. Transnational Motors, Inc.*, 537 N.W.2d 471 (Mich. Ct. App. 1995). And this:

> As to any requirement that the results obtained be in proportion to the amount of the overall fee award, when Congress enacts a statutory scheme such as the FDCPA that provides for statutory damages and fee shifting, "the amount of attorney fees need not be proportionate to the amount of damages recovered." *Phenow*, 766 F. Supp. 2d at 959 (awarding $11,126.70 in attorney's fees and costs to FDCPA plaintiff, where parties settled for statutory damages of $1,000) (citing *Loggins v. Delo*, 999 F.2d 364, 368 (8th Cir. 1993) (acknowledging in action brought under 42 U.S.C. §§ 1983, 1988 that "proportionality between the amount of damages and fee awards was not required")).

*Wiley,* 594 F. Supp. 3d at 1151 (D. Minn. 2022).

The U.S. Supreme Court has previously considered the question of proportionality in attorney fee awards and rejected the proposition that fee-shifting awards under section 42 U.S.C. 1988 civil rights cases should be proportionate to the amount of damages a plaintiff actually recovers.

> Our cases interpreting § 1988 establish "[a] strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a 'reasonable' fee." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

*Murphy v. Smith,* 583 U.S. 220, 227, 138 S. Ct. 784, 789, 200 L. Ed. 2d 75 (2018).

Similarly, in the context of the Fair Credit Reporting Act (FCRA), the Fourth

Circuit held:

> Since there will rarely be extensive damages in an FCRA action,
> requiring that attorney's fees be proportionate to the amount
> recovered would discourage vigorous enforcement of the Act.

*Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 974

(4th Cir. 1987).

The proportionality argument was also rejected in this district in an

FDCPA case, *Armstrong v. Rose Law Firm, P.A.*, *supra*, where the defendant

contended that awarding the plaintiff $40,000 in fees would create a windfall

since the plaintiff's damages totaled only $1,000. The court found that the

plaintiff did not choose to create the disparity, and although the defendant had a

right to aggressively defend the case, doing so caused a large amount of litigation

and greatly increased the number of hours the plaintiff's attorney had to expend.

*Id.*; *see also Bankey v. Phillips & Burns, LLC*, Civ. No. 07-2200, 2008 WL

2405773, *1, *6 (D. Minn. June 11, 2008) (awarding $28,770.50 in attorney fees

and $4,859.90 in costs after plaintiff accepted an offer of judgment of $2,500 for

an FDCPA violation); *see also Phenow*, Civ. No. 10-2113 (D. Minn. March 1,

2011), *supra* (awarding $10,714.00 in attorney fees and $412.70 in costs after

plaintiff accepted an offer of judgment for $1,000 after an FDCPA violation).

> The values at stake in a civil-rights case often cannot be measured—
> or at least fully measured—with dollars. Thus, as a general rule,
> courts do not require proportionality between the amount of

damages awarded to a civil-rights plaintiff and the amount of fees awarded to the plaintiff's attorneys. *Simpson v. Merchs. & Planters Bank*, 441 F.3d 572, 580-81 (8th Cir. 2006).

*Miller v. Bd. of Regents of Univ. of Minnesota,* 402 F. Supp. 3d 568, 596 (D. Minn. 2019).  Likewise, Major's vindication of his right to be free of collection harassment cannot be fully measured by dollars.

Accordingly, this Court should not consider proportionality, but rather Congress' intent in creating the fee-shifting provision of the FDCPA and the goals sought to be achieved in regard to consumer protection. Since Major prevailed on his claim, and the lodestar is an accurate representation of hours expended in this case, this Court should award the full amount of attorneys' fees requested.

### d.  By Undertaking this Case, Christensen Sampsel Exposed Itself to Financial Risk.

Major's counsel initially took this case on a contingent fee basis, exposing themselves to significant risk, fronting the cost of litigation without any guarantee of eventually prevailing.  *See In re Xcel*, 364 F.Supp.2d 980, 994 (D. Minn. 2005) ("Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees."). This case was undertaken with no assurance of a favorable outcome.  *See In Re Xcel*, 364 F.Supp.2d at 994-95 (risk is an important factor because trial and judicial review are unpredictable and positive results are not guaranteed); *Yarrington*, 697 F.Supp.2d at 1062-63 (D. Minn. 2010) (significant risk because "no assurance of a favorable outcome"); *Khoday*, 2016 WL 1637039, *9 (same). The legal and factual issues were novel

and complex as they involved the application of both federal and state law. Thus, this factor also weighs in favor of the fees requested by counsel. Major respectfully requests this Court similarly find that significant risks were undertaken by Major's counsel and that such risks support the reasonableness of his attorney's fees and costs award.

### e. Time and Labor Involved

Major's counsel has expended significant hours representing the interests of the Major. Counsel met with Major on numerous occasions via Zoom, phone, email and text, in preparation for drafting the pleadings. Major's counsel used technological resources to a maximum to meet his obligation under Rule 1, by litigating efficiently and inexpensively, and cooperated with Halliday to reach a speedy, fair, adequate, and reasonable resolution. To date, the fees incurred by Major and Major's counsel in prosecuting this action are set forth below and detailed in Carl Christensen's Declaration. Therefore, Major's counsel respectfully requests this Court adopt the same rationale to the case as the time and effort expended by Major's counsel supports the request for fees and costs.

### f. Major's Requested Recovery of Costs

Major further seeks recovery of all costs incurred by Major throughout the prosecution of this Action. 49 U.S.C. Section 20109(e)(2)(C) provides for recovery of "litigation costs" and "expert witness fees." Taxable costs are likewise recoverable under Federal Rule of Civil Procedure, Rule 54(d)(1), and pursuant to the District of Minnesota Local Rule 54.3. Taxable costs include:

(1) fees of the clerk;
(2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) fees and disbursements for printing and witnesses;
(4) fees for exemplification and costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) docket fees under section 1923 of this title; and
(6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Major's claims under the FDCPA further permit Major to recover all costs reasonably incurred in the prosecution of this Action. *See* 15 U.S.C. § 1692k(a); 15 U.S.C. § 1681n(a); 18 U.S.C. § 2724(b)(3). To date, the costs incurred by Major and Major's counsel in prosecuting this action are set forth below and detailed in **Christensen Decl. Ex. - Costs Description.**

| Date | Amount | Description of Costs |
|---|---|---|
| 2023-10-17 | $49.00 | Title Search |
| 2023-12-15 | $34.00 | Title Search Fees |
| 2023-12-21 | $8.53 | USPS costs for sending Qualified Written Request correspondence to NewRez/Shellpoint via certified U.S. Mail. |
| 2023-12-21 | $8.53 | USPS costs for sending Qualified Written Request correspondence to New Residential via certified U.S. Mail. |
| 2024-05-21 | $405.00 | Filing Fees |
| 2024-05-28 | $130.00 | Invoice 29989 Twin City Process Service fees for service attempts and completed personal service of Summons and Complaint on Halliday Watkins & Mann. |
| 2024-06-12 | $119.00 | Invoice 480168 Proof process service of Summons and Complaint documents on Connexus Credit Union. |
| 2024-06-26 | $119.00 | Invoice 480168 Proof Process Service fee for |

| | | personal service of Summons and Complaint on Defendant Connexus Credit Union. |
|---|---|---|
| **Total Costs** | **$873.06** | |

Based on the above, Major's total attorney's fees, costs, and expenses incurred to litigate this matter are:

| Category | Contingency Billing Amount (Lodestar) | Hourly Billing Amount (Non-Lodestar) | TOTAL |
|---|---|---|---|
| Carl Christensen's attorney fees | **$Error! Reference source not found.** | $200.00 | $13,580.00 |
| Christopher Wilcox's attorney fees | **$Error! Reference source not found.** | $0.00 | $5,590.00 |
| Ryan Supple's attorney fees | **$Error! Reference source not found.** | $4,445.00 | $19,250.00 |
| Clerk Maglio's fees | **$Error! Reference source not found.** | -- | $2,349.00 |
| Clerk Hanson's fees | **$Error! Reference source not found.** | -- | $594.50 |
| Clerk Whipple's fees | **$Error! Reference source not found.** | -- | $58.00 |
| Paralegal Robertson's Fees | **$Error! Reference source not found.** | $28.00 | $533.50 |
| Costs and Expenses | $873.06 | -- | $873.06 |
| TOTAL | $38,155.06 | $8,881.50 | $47,036.56 |

(Christensen Decl. ¶ 76.)

## C.  Halliday's Second Rule 68 Offer is of No Consequence.

After Major accepted the damages-only Rule 68 offer, Halliday made a second Rule 68 offer.  The Court should hold that the second Rule 68 offer has no significance and is not allowed under Rule 68.

The second rule 68 offer cannot change the prevailing party analysis.  By accepting the first and legitimate rule 68 offer, Major is the prevailing party.  A second Rule 68 offer cannot change the prevailing party determination.  If it did,

then it would fail as a mechanism to encourage settlement.

> An offer of judgment pursuant to Rule 68 "limits a plaintiff's ability to recover <u>costs</u> incurred after the date of the offer." *Paz v. Portfolio Recovery Assocs., LLC*, 924 F.3d 949, 953 (7th Cir. 2019); *see also* FED. R. CIV. P. 68(d) ("If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."). The rule's purpose is to encourage settlement and to discourage protracted litigation. *Sanchez v. Prudential Pizza, Inc.*, 709 F.3d 689, 691 (7th Cir. 2013). The Rule's limit on a plaintiff's recovery of costs often limits the recovery of attorneys' fees in fee-shifting cases. *Paz*, 924 F.3d at 953. Rule 68 incorporates the definition of "costs" from the relevant fee-shifting statute, and therefore cuts off recoverable attorneys' fees after a Rule 68 offer when the statute defines "costs" to include attorneys' fees. *Paz*, 924 F.3d at 953 (7th Cir. 2019) (citing *Marek v. Chesny*, 473 U.S. 1, 9 n.2 (1985)). However, in setting forth the damages to which a plaintiff in a "successful action" is entitled, the FDCPA separates costs and attorneys' fees. *See* 15 U.S.C. § 1692k(a)(3). Therefore, a prevailing party in an FDCPA action is entitled to attorneys' fees notwithstanding Rule 68. *Paz*, 924 F.3d at 953. Because Plaintiff was successful in obtaining judgment against Defendant, she is entitled to reasonable attorneys' fees under the FDCPA.

*Lloyd v. Credit Servs. Int'l, Inc.*, No. 18 C 4267, 2019 WL 5311843, at *2 (N.D. Ill. Oct. 21, 2019).

Indeed, related to the effect of the first Rule 68 offer, it cannot function to limit recovery of attorney fees if its language does not expressly say so. If an offer of judgment does not explicitly specify that an award of attorneys' fees is limited to the fees incurred before the date of the offer, a successful plaintiff can be awarded fees under the FCRA for preparation of the fee petition. *Guerro v. Cummings*, 70 F. 3d 1111, 1113-14 (9th Cir. 1995). This is a just result.

Instead, this second Rule 68 offer seeks to unjustly change the prevailing party determination borne out of Major's acceptance of the first Rule 68 offer. The effect is obvious: Halliday is attempting to refuse to settle the attorneys' fees and costs following the first Rule 68 offer to force Major to fight (possibly uncompensated for that fight) to recover fees and costs. This is wholly antithetical to Rule 68. "A request for attorney's fees should not result in a second major litigation." *Beckler v. Rent Recovery Sols., LLC*, 83 F.4th 693, 695 (8th Cir. 2023) citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983). This is exactly the result here if the Court were to regard the second Rule 68 offer as proper and in accordance with the Rule.

Nothing in the terms of the Rule 68 Offer implicates such a limitation or leads to this unjust result. Halliday's making of the second Rule 68 offer caused Major to brief substantive legal issues as to its propriety, which is typically outside the ambit of a motion for fees after accepting a Rule 68 offer. Moreover, related to the cost-shift effect of the rule, nothing in this application with respect to costs were incurred after the settlement.

This Court should reject this second Rule 68 offer process as simply not allowed under the Rule.

## IV.   CONCLUSION

Based upon the foregoing facts, law and arguments of counsel, Major respectfully requests that this Court GRANT Major's Motion for Attorneys' Fees

and Costs at the requested lodestar rate and ORDER that Halliday pay to Major's counsel within 30 days, as follows:

a)      Reasonable attorneys' fees in the amount of $46,163.50;

b)      Costs in the amount of $873.06; and

d)      any such further relief as it deems just and equitable.

Respectfully submitted,

Dated: August 15, 2024

**CHRISTENSEN SAMPSEL PLLC**

s/ Carl E. Christensen
Carl E. Christensen (MN #350412)
305 North Fifth Avenue, Suite 375
Minneapolis, Minnesota 54401
(612) 473-1200
carl@christensensampsel.com

***Attorney for Plaintiff***