UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Nicholas R. Major,                                File No. 24-cv-01897 (ECT/DJF)

    Plaintiff,

v.                                                **OPINION AND ORDER**

Halliday Watkins & Mann, P.C.,

    Defendant.

---

Carl E. Christensen, Christopher Wilcox, and Ryan Supple, Christensen Sampsel PLLC, Minneapolis, MN, for Plaintiff Nicholas R. Major.

Jared M. Goerlitz, Goerlitz Law, PLLC, St. Paul, MN, for Defendant Halliday Watkins & Mann, P.C.

---

    Plaintiff Nicholas Major brought this FDCPA case in May 2024. He sued two defendants—Connexus Credit Union and Halliday Watkins & Mann—alleging both engaged in unlawful debt-collection practices. The case didn't last the summer. On July 30, Mr. Major voluntarily dismissed his claims against Connexus and accepted a $3,000 offer of judgment from Halliday Watkins.

    Now, pursuant to the FDCPA's fee-shifting provision, Mr. Major seeks to recover the full amount of his claimed attorneys' fees—$46,163.50—from just Halliday Watkins. For several reasons that will be discussed, this request is unreasonable. Though there is room to fairly debate the best outcome, my answer is to award Mr. Major attorneys' fees in the substantially reduced amount of $11,566.63.

*Plaintiff's factual allegations.* Mr. Major's father, Dennis, owned a home in Howard Lake, Minnesota. Compl. [ECF No. 1] at 3 ¶ 12; *id.* at 5 ¶ 18.[1] Dennis took out two loans against the home, one in 2004 and the other in 2007, both secured by mortgages. *Id.* at 5 ¶¶ 18, 21. After Dennis allegedly fell behind on the 2007 loan, the mortgage's assignee, Connexus Credit Union, served Dennis with a complaint in 2011. *Id.* at 11 ¶¶ 56, 58. Connexus, however, never filed the complaint in a Minnesota state district court. *Id.* at 11 ¶ 57. By operation of a Minnesota Rule of Civil Procedure, Connexus's failure to file the complaint meant that the action was "deemed dismissed with prejudice." Minn. R. Civ. P. 5.04(a); Compl. at 13 ¶ 68.[2] Dennis died in 2020, and Mr. Major inherited the home. Compl. at 7 ¶ 31; *id.* at 7–8 ¶ 35. According to Mr. Major, nothing remains owed on either the 2004 or 2007 loan. This is because Mr. Major paid what he thought was the remaining balance on the 2004 loan in June 2022. *Id.* at 8 ¶ 38; *id.* at 9 ¶¶ 44, 47.[3] And, in Mr. Major's understanding of the law, Connexus's failure to timely file the 2011

---

[1]   The Complaint numbers its paragraphs inconsistently. It goes from 1 to 128, and then restarts the count at 65. *See* Compl. at 23. To avoid confusion, all citations to the Complaint will mark the page number followed by the paragraph number.

[2]   In Minnesota state courts, a civil action is commenced by service, not filing. Minn. R. Civ. P. 3.01. The "deemed dismissed" aspect of Minn. R. Civ. P. 5.04(a) took effect July 1, 2013, after Connexus served Dennis with the complaint. *See Gams v. Houghton*, 884 N.W.2d 611, 614 (Minn. 2016). For actions pending when the deemed-dismissed rule was adopted, the Minnesota Supreme Court "provided a 1-year grace period." *Id.* Connexus never filed the complaint, meaning it did not meet this extended deadline. Compl. at 13 ¶ 69.

[3]   The Complaint's allegations regarding the 2004 loan are not consistent. Though the Complaint alleges that Mr. Major paid the 2004 loan's remaining balance, Compl. at 8 ¶ 38; *id.* at 9 ¶¶ 44, 47, it also alleges "[o]n information and belief" that Dennis may have used the 2007 loan proceeds to pay the remaining balance on the 2004 loan, *id.* at 6 ¶ 24.

2

complaint with a court means he owes nothing on the 2007 loan. *Id.* at 13 ¶ 69. Connexus and Halliday Watkins nonetheless sent Mr. Major letters between May and November 2023 attempting to collect on the 2007 loan. *Id.* at 9–10 ¶¶ 50–52; *id.* at 13–14 ¶¶ 73–76; *id.* at 15 ¶ 83; *id.* Exs. 2, 3, 4, 5. These letters and related communications prompted Mr. Major to retain counsel and then to file this case. *See* Major Decl. [ECF No. 36] ¶¶ 33–35.

*Plaintiff's claims and requested relief.* Mr. Major filed this case in May 2024. *See* Compl. at 30. He asserted FDCPA claims against Connexus and Halliday Watkins. *Id.* at 23–29 ¶¶ 65–104.[4] Mr. Major alleged the letters and perhaps other communications he received from Connexus and Halliday Watkins falsely represented the amount or legal status of a debt, *id.* at 24 ¶¶ 71–72; *id.* at 27–28 ¶ 94, that Connexus and Halliday Watkins falsely represented that nonpayment of the 2007 loan would result in the seizure or sale of property, *id.* at 25 ¶ 76; *id.* at 28 ¶ 95, that Connexus and Halliday Watkins's letters were deceptive and threatened unlawful action, *id.* at 25 ¶ 78; *id.* at 28 ¶ 96, that "the natural consequence of" Connexus and Halliday Watkins's actions "was to harass, oppress, or abuse [Mr.] Major in connection with the collection of" a debt that was not owed, *id.* at 25 ¶ 79; *id.* at 28 ¶ 97, and that Connexus and Halliday Watkins's actions amounted to "unfair or unconscionable means to collect or attempt to collect any debt," *id.* at 26 ¶ 82; *id.* at 28–

---

[4] Mr. Major alleged that Halliday Watkins's letters violated federal regulations implementing the Truth in Lending Act, 15 U.S.C. § 1639f(a). Compl. at 24–25 ¶¶ 73–75. In Mr. Major's understanding, the Truth in Lending Act forbade Halliday Watkins from demanding late fees and interest because the lender failed to provide him with periodic statements of amounts owed on the 2007 loan. *See id.* The alleged Truth in Lending Act violations serve as a basis for the FDCPA claims. Mr. Major asserts no independent claim under the Truth in Lending Act.

29 ¶ 100.  As a result, Mr. Major claimed to have "incurred time, costs, and attorneys' fees" and suffered emotional distress.  *Id.* at 26 ¶¶ 84–85; *id.* at 29 ¶¶ 102–03.  For relief, Mr. Major sought actual and statutory damages, "an award of costs of litigation and reasonable attorney's fees," and "such other and further relief as to [sic] the Court deems just and equitable."  *Id.* at 29–30 (following "WHEREFORE" clause).

*Procedural history.*  As far as the court's docket shows, not much happened in this case.  After obtaining Mr. Major's assent to extend its responsive-pleading deadline, Connexus filed a Rule 12(b)(6) motion on July 11, 2024.  ECF Nos. 11, 14, 19.  Before his deadline to respond to the motion, Mr. Major filed a notice voluntarily dismissing Connexus without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).  ECF No. 28.  Halliday Watkins charted a different course.  It answered the Complaint on July 11, ECF No. 18, and that same day served a $3,000 offer of judgment under Fed. R. Civ. P. 68, ECF No. 29-2.  The offer excluded "any amount of money Plaintiff may be entitled as an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3), which would be determined by the Court."  *Id.*  Mr. Major accepted the offer on July 30.  ECF No. 29.  The parties filed no report under Fed. R. Civ. P. 26(f), and there was no scheduling conference under Fed. R. Civ. P. 16.  *See* ECF No. 31.

*Settlement history between Mr. Major and Halliday Watkins.*  Mr. Major and Halliday Watkins discussed settlement during July 2024, and these discussions are relevant to Mr. Major's attorneys' fees motion.  On July 8, Mr. Major offered to release all claims against Halliday Watkins for $65,000; this amount included an unspecified sum for attorneys' fees and costs.  Goerlitz Decl. Ex. 1 [ECF No. 41-1] at 10.  Halliday Watkins

4

rejected the demand, countering with its $3,000 offer of judgment. After Mr. Major accepted the $3,000 offer, the two parties tried to resolve the attorneys' fees and costs issue. Mr. Major's first fees-and-costs demand was for $30,000. *Id.* at 8. As part of this demand, Mr. Major's lawyers represented that their total fees and costs were $30,378.06, meaning the demand represented a negligible compromise. *Id.* Halliday Watkins rejected this demand; it served a second, fees-and-costs-specific offer of judgment for $5,000. Corrected Christensen Decl. [ECF No. 40] ¶ 83. Mr. Major did not accept the offer. That brings us to this motion.

*Law governing the fee-entitlement question and the fee award's amount*. Under the FDCPA, a "successful" plaintiff may recover from a non-compliant debt collector, among other amounts, "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The party seeking fees has the burden of establishing that the fees sought are reasonable and should submit evidence supporting the rates claimed and hours worked. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 437 (1983). "To calculate attorney's fees, courts typically begin by using the lodestar method, which multiplies the number of hours reasonably expended by reasonable hourly rates. When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 529 (8th Cir. 2019) (cleaned up); *see In re RFC*, 399 F. Supp. 3d 827, 846 (D. Minn. 2019) ("Generally, to determine whether an hourly rate is reasonable, courts look at the rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11

5

(1984)). Trial-court judges need not "become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

*Analysis of claimed hourly rates – attorneys.* Mr. Major is represented by Christensen Sampsel PLLC. Seven professionals from the firm worked on this case. *See* Corrected Christensen Decl. ¶¶ 4–70. These included three attorneys, three law clerks, and a paralegal. *Id.* Begin with the attorneys, Carl E. Christensen, Christopher J. Wilcox, and Ryan J. Supple. Each attorney claims to have charged three hourly rates from 2023 (when their representation of Mr. Major began) to 2024 (when this motion was filed). *Id.* ¶¶ 24, 35, 47. These include a 2023 contingent-fee rate, a 2024 contingent-fee rate, and a client-paid hourly rate. *Id.* The claimed 2023 contingent-fee rates are $500 for Mr. Christensen, $325 for Mr. Wilcox, and $350 for Mr. Supple. *Id.*[5] Judged against each attorney's qualifications, a recent case from this District awarding fees to Christensen Sampsel, and my own experience and knowledge of the market, the claimed 2023 contingent-fee rates are reasonable. *See id.* ¶¶ 4–21 (describing Mr. Christensen's credentials), ¶¶ 27–34 (Mr.

---

[5] Mr. Christensen and Mr. Supple's 2023 contingent-fee rates match their client-paid hourly rates. Corrected Christensen Decl. ¶¶ 24, 47. Mr. Wilcox's 2023 contingent-fee rate and his client-paid hourly rate are different and the subject of some confusion. *Id.* ¶ 35. Mr. Wilcox's billing records show that he never billed at his $375 client-paid hourly rate. *See id.* ¶ 71(b). In his supporting declaration, Mr. Christensen represented that Mr. Wilcox's 2023 contingent-fee hourly rate was $375 but acknowledged that Mr. Wilcox billed his 2023 contingent time at $325 per hour. *Id.* ¶ 35. The hourly rate at which Mr. Wilcox actually billed, or $325, is applied here.

6

Wilcox), ¶¶ 37–46 (Mr. Supple); *see also Knapp v. Compass Minn., LLC*, No. 24-cv-100 (SRN/DTS), 2024 WL 3755916, at *4 (D. Minn. Aug. 9, 2024). However, Mr. Major has not carried his burden to show that the claimed 2024 contingent-fee hourly rates are reasonable. These rates increased substantially from 2023. Mr. Christensen's rate increased ten percent to $550. Corrected Christensen Decl. ¶ 24. Mr. Wilcox's billed rate increased about thirty percent, from $325 to $425. *Id.* ¶ 35. And Mr. Supple's rate increased about fourteen percent to $400. *Id.* ¶ 47. No justification whatsoever is provided to explain or defend these increases. Without at least some basic explanation, I cannot say that either these increases or the increased rates are reasonable.

*Analysis of claimed hourly rates – law clerks.* The law clerks are Sydney Maglio, Darby Hanson, and Donna Whipple. *Id.* ¶¶ 49–62. The claimed hourly rate for each law clerk is $145. *Id.* ¶ 56 (Ms. Maglio), ¶ 59 (Mr. Hanson), ¶ 62 (Ms. Whipple). This rate is not supported. (1) It is difficult to understand how it might be appropriate to assign the same relatively high hourly rate to all three law clerks. Though each is unquestionably qualified to serve in the role, the three do not share identical qualifications. For example, one is a law school graduate, *id.* ¶ 50, one is a third-year law student, *id.* ¶ 61, and one is a second-year law student, *id.* ¶ 58. Ms. Maglio is described as possessing significant consumer-law experience and training. *Id.* ¶¶ 51–55. The other two are not described as possessing comparable experience. *See id.* ¶¶ 58, 61. To be reasonable, the requested hourly rates would account for these differences. (2) Ms. Maglio is the most experienced of the three law clerks. But in *Knapp*, the firm requested an $85 hourly rate for her, and the court determined this rate was reasonable. 2024 WL 3755916, at *4. Mr. Major

7

nowhere addresses the discrepancy between the firm's $85-per-hour ask in *Knapp* and its $145-per-hour ask here. Even accounting for the contingent-fee nature of this case, it is difficult to understand how $145 might represent a reasonable increase from the $85 hourly rate awarded in *Knapp*. (3) No authority is cited to justify the $145 hourly rate. Mr. Major asserts the rate "is similarly consistent with the prevailing market rates," but he cites no evidence or authority showing what the prevailing market rates might be. Corrected Mem. in Supp. [ECF No. 39] at 19. With no support for the requested rate, it seems most reasonable to revert to *Knapp*. There, the highest law-clerk hourly rate Christensen Sampsel requested, and the court approved, was $95. 2024 WL 3755916, at *4. That rate will be awarded here.

*Analysis of claimed hourly rate – paralegal.* The claimed hourly rate for the paralegal ranges from $140 to $190, depending on when the paralegal worked on the case. Corrected Christensen Decl. ¶¶ 67–68. Perhaps owing to the comparatively small fee amount Mr. Major seeks to recover for the paralegal's work—$533.50—Halliday Watkins does not challenge the paralegal's claimed hourly rates. For that reason, and because the claimed hourly rates are comparable to, or at least not unreasonably greater than, paralegal rates approved in this District, *see Berscheid v. Experian Info. Sols., Inc.*, No. 22-cv-86 (JRT/LIB), 2023 WL 3750182, at *3 (D. Minn. June 1, 2023), the paralegal's claimed hourly rates will not be reduced.

*Analysis of the claimed hours.* Mr. Major claims his attorneys reasonably expended 100.2, 101.3, or 114.6 hours on this case. Which number you get depends on what parts of the supporting declaration you read. If you add the subtotals provided beneath each

professional's time descriptions, you get 101.3 hours. *See* Corrected Christensen Decl. ¶ 71(a)–(g). If you exclude from that number the small amount of time the firm wrote off on its bills to Mr. Major, you get 100.2 hours. *See id.* ¶¶ 71(c) (showing write-offs to Mr. Supple's time on May 22 and July 8, 2024), 71(g) (showing write-offs to the paralegal's time on November 2, 2023). And if you add the hours Mr. Christensen represents each professional spent on the case, you get 114.6 hours. *See id.* ¶¶ 26, 36, 48, 56, 59, 62, 68. Regardless, Mr. Major seeks to recover fees billed for all time expended on the case from Halliday Watkins. For several basic reasons, no matter which of the three numbers is considered, the claimed hours are unreasonably excessive:

(1) Mr. Major's supporting documentation contains discrepancies that raise doubts about its trustworthiness. There is the disparity in claimed hours just discussed. There is also a seemingly obvious, important math error in the firm's supporting declaration. In a table intended to show the total claimed fees and expenses, Mr. Christensen claims the firm billed $8,881.50 to Mr. Major on a non-contingent, hourly-fee basis. *Id.* ¶ 76. The table indicates that three professionals' fees of $200, $4,445, and $28 (billed at client-paid hourly rates), were added to arrive at $8,881.50. *Id.* Obviously, these three numbers do not total $8,881.50; they sum to $4,673.

(2) Mr. Major cannot reasonably expect to recover all his fees from just one defendant when he sued two. Mr. Major did not sue just Halliday Watkins. He also sued Connexus. There is no reason to think the claims against Halliday Watkins were more complicated or more important to Mr. Major than the claims against Connexus. The Complaint treats both defendants comparably, and the firm's time records do not usually

9

indicate that work was specific to one defendant or the other. And the Complaint alleges that Connexus and Halliday Watkins caused Mr. Major to suffer identical injuries. *See* Compl. at 26 ¶¶ 83–86 (alleging injuries caused by Halliday Watkins), 29 ¶¶ 101–04 (alleging injuries caused by Connexus). The natural inference is that the firm's work generally served the case's prosecution in equal parts against both defendants and that the firm spent roughly equal time on the claims against each defendant.[6]

(3) The time records and other fee-supporting submissions reflect significant inefficiencies in the case's prosecution. Accept the idea that this case required more fact-investigation time than most FDCPA cases. Once the facts were known, the basis for the FDCPA claims was straightforward: Connexus and Halliday Watkins attempted to collect debts that (Mr. Major says) were not owed, meaning the collection efforts plausibly violated several FDCPA provisions. There is no obvious justification for spreading the case's work across seven professionals. At the very least, this resulted in duplicative billing and a need for an unreasonable volume of internal firm communications. *See* Goerlitz Decl. Ex. 6 [ECF No. 41-6]. For example, on July 9, 2024, the three attorneys each billed time for debriefing a meeting with opposing counsel. *See* Corrected Christensen Decl.

---

[6] I have carefully reviewed the firm's time records. If this motion is excluded, they do not show which defendant required more of the firm's time. There is one reason to guess Connexus may have consumed more time. It moved to dismiss. ECF No. 19. Halliday Watkins, by contrast, answered the Complaint. ECF No. 18. The billing records seem to show that more hours were billed to the motion than the Answer. *See, e.g.*, Corrected Christensen Decl. ¶ 71(b) (showing Wilcox conducting meet and confers with Connexus, reviewing the motion to dismiss brief, researching additional claims against Connexus, calendaring filing deadlines, but with respect to the Answer, only "skim[ming]" it).

¶ 71(a)–(c). As another example, on July 12, 2024, Mr. Supple billed time to "Confer with attorney Wilcox," and Mr. Wilcox billed to "accept calendar invites from Attorney Supple." *Id.* ¶ 71(b)–(c). Inefficiencies, if they can be called that, also are evident in the Complaint's drafting. The firm billed 10.3 hours to drafting the Complaint after it was filed. Recall the Complaint was filed on May 21, 2024. The firm's time records reflect that Mr. Christensen billed a total of 2.4 hours to drafting the Complaint on May 23, that Mr. Wilcox billed a total of 2.4 hours to drafting the Complaint on May 23 and June 14, and that Mr. Supple billed a total of 5.5 hours to drafting the Complaint on May 23 and May 24. *See id.* ¶ 71(a)–(c). Nothing explains why the firm would have continued to bill for drafting or revising a pleading that already had been filed. No amended complaint was ever filed. If an amended complaint were merely contemplated, it is difficult to understand why Halliday Watkins should pay for that possibility. In addition to these issues, the attorneys' fees motion reflects inefficiencies. The initial brief and principal supporting declaration contained errors that required the filing of corrected versions. *See* ECF Nos. 34–35, 39–40. As noted, the materials that were filed contained inconsistencies that required considerable court time to sort out. And it seems fair to say that the thirty-six-page brief and supporting materials Mr. Majors filed resulted in "major litigation," certainly as compared with what little else transpired in this case. *Hensley*, 461 U.S. at 437 ("A request for attorney's fees should not result in a second major litigation.").

(4) The case involved negligible in-court work. Mr. Major's voluntary dismissal of Connexus meant he did not have to respond to Connexus's Rule 12(b)(6) motion. There was no other motion practice. Mr. Major's acceptance of Halliday Watkins's offer of

11

judgment prompted cancellation of the Rule 26(f) report deadline and the Rule 16 pretrial conference. There was no discovery. In other words, the tasks that ordinarily trigger the highest attorneys' fees were unnecessary and did not occur in this case.

(5) By any measure, Mr. Major's $3,000 recovery was insubstantial. The amount appears modest in comparison to the Complaint's description of Mr. Major's injuries. *See* Compl. at 26 ¶¶ 83–86 (alleging injuries caused by Halliday Watkins). The amount also is quite modest in comparison to Mr. Major's last settlement demand. Recall that Mr. Major's final settlement demand from Halliday Watkins was presented on July 8 in the amount of $65,000. Goerlitz Decl. Ex. 1 at 10. Though this amount included an unspecified sum for attorneys' fees and costs, Mr. Major's counsel would represent on July 24 that the firm's total fees and costs as of that date were $30,378.06. *Id.* at 8. In other words, Mr. Major's July 8 damages demand exceeded $34,000. He recovered less than ten percent of that. Mr. Major does not suggest that the case achieved some important non-monetary or other goal.

*Determination of an appropriate fee award.* Applying the hourly rates that I determined were reasonable to each corresponding professional's time reduces the $46,163.50 requested fees to $33,047.50.[7] From there, accounting for the

---

[7] This math deserves explanation. I started from paragraph 71 in the Corrected Christensen Declaration. That paragraph lists each billing entry and totals the hours for each attorney, law clerk, and paralegal. Where the billing totals differ from earlier statements in the Declaration, I took the later statements as accurate because they were tethered directly to the billing entries. I removed hours billed at $0, reaching a total of 100.2 hours billed in the matter. Table 1 shows the calculations. All citations are to the Corrected Christensen Declaration.

unreasonableness of Mr. Major's attorneys'-fees request escapes mathematical calculations or precise time cuts. Our Eighth Circuit Court of Appeals has "ordered or approved flat percentage reductions in appropriate cases," *Beckler v. Rent Recovery Sols., LLC*, 83 F.4th 693, 695 (8th Cir. 2023), and this seems like an appropriate case for that approach. As a starting point, a fifty percent reduction is appropriate to account for the fact that Mr. Major sued two defendants, attributed roughly equal responsibility to both, but only seeks attorneys' fees from one. Importantly, Mr. Major did not attempt to show

Table 1: Corrected Hours

| Attorney / Law Clerk / Paralegal | Hours Billed in Declaration Body | Hours Billed in Declaration Table | Hours Billed Above $0/hr |
|---|---|---|---|
| Christensen | 25.4 hrs. ¶ 26. | 25.0 hrs. ¶ 71(a). | 25.0 hrs. |
| Wilcox | 13.4 hrs. ¶ 36. | 13.4 hrs. ¶ 71(b). | 13.4 hrs. |
| Supple | 53.0 hrs. ¶ 48. | 40.3 hrs. ¶ 71(c). | 39.5 hrs. 5/22/24 & 7/8/24 entries removed. ¶ 71(c). |
| Maglio | 16.2 hrs. ¶ 56. | 16.2 hrs. ¶ 71(d). | 16.2 hrs. |
| Hanson | 3.0 hrs. ¶ 59. | 3.0 hrs. ¶ 71(e). | 3.0 hrs. |
| Whipple | 0.4 hrs. ¶ 62. | 0.4 hrs. ¶ 71(f). | 0.4 hrs. |
| Robertson | 3.2 hrs. ¶ 68. | 3.0 hrs. ¶ 71(g). | 2.7 hrs. 11/2/23 entry removed. ¶ 71(g). |
| TOTAL | 114.6 hrs. | 101.3 hrs. | 100.2 hrs. |

I then multiplied the hours billed for each professional by the corresponding reasonable rate. Having multiplied the corrected hours by the corrected rates, I added all the products and reached the sum of $33,047.50. Table 2 shows the calculations. Again, all citations are to the Corrected Christensen Declaration.

Table 2: Corrected Hours Multiplied by Corrected Rate

| Attorney / Law Clerk / Paralegal | Hours Billed Above $0/hr | Corrected Rate | Total |
|---|---|---|---|
| Christensen | 25.0 hrs. ¶ 71(a). | $500/hr. ¶ 24. | $12,500.00 |
| Wilcox | 13.4 hrs. ¶ 71(b). | $325/hr. ¶ 35. | $4,355.00 |
| Supple | 39.5 hrs. ¶ 71(c). | $350/hr. ¶ 47. | $13,825.00 |
| Maglio | 16.2 hrs. ¶ 71(d). | $95/hr. | $1,539.00 |
| Hanson | 3.0 hrs. ¶ 71(e). | $95/hr. | $285.00 |
| Whipple | 0.4 hrs. ¶ 71(f). | $95/hr. | $38.00 |
| Robertson | 0.5 hrs. ¶ 71(g). and 2.2 hrs. ¶ 71(g). | $175/hr. ¶ 67. and $190/hr. ¶ 67. | $505.50 |
| TOTAL | 100.2 hrs. | -- | $33,047.50 |

that he would have incurred the same fees had he sued only Halliday Watkins. Nor has he shown that the claims against Halliday Watkins were more important or time-intensive than the claims against Connexus. In these circumstances, Halliday Watkins cannot reasonably be required to pay the fees Mr. Major incurred pursuing Connexus, and my best estimation is that the firm spent roughly equal time on claims against each defendant.[8] I conclude that an additional fifteen percent reduction is appropriate to account for the remaining issues underlying the requested fees' excessiveness. As discussed, this case was short-lived and not legally complicated, assigning seven professionals to the case created inefficiencies reflected in the billing records, and Mr. Major's recovery from Halliday Watkins was insubstantial. Of course, the precise reduction warranted by these considerations is debatable. My best estimation is that a fifteen-percent reduction is sufficient and achieves non-arbitrary "rough justice." *Fox*, 563 U.S. at 838. Together, these percentage reductions add to sixty-five percent, and reduce the requested attorneys' fees from $33,047.50 to $11,566.63.

---

[8] There is another reason not to award Mr. Major fees incurred pursuing claims against Connexus. He did not prevail on these claims in any sense. He dismissed the claims voluntarily. *See Sequa Corp. v. Cooper*, 245 F.3d 1036, 1037–38 (8th Cir. 2001) ("[A] voluntary dismissal without prejudice means that neither party can be said to have prevailed.").

**ORDER**

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Plaintiff Nicholas R. Major's Motion for Attorneys' Fees and Costs [ECF No. 32] is **GRANTED IN PART**.

2. Plaintiff Nicholas R. Major is awarded attorneys' fees in the amount of $11,566.63 and costs in the amount of $873.06.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  December 27, 2024                s/ Eric C. Tostrud
                                         Eric C. Tostrud
                                         United States District Court